# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL DELGADILLO, | 1:07-CV-00625 LJO GSA HC |
|       Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|   v. | |
| F. GONZALES, et al., | |
|       Respondents. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on November 10, 1994, of one count of second degree murder in violation of Cal. Penal Code § 187, with a gun use enhancement in violation of Cal. Penal Code § 12022.5(a). See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. Petitioner was sentenced to serve an indeterminate term of seventeen years to life in state prison with the possibility of parole. Id. His minimum eligible parole date was December 12, 2005. See

1

1  Respondent's Answer, Exhibit 2 at 1.

2  On June 2, 2005, Petitioner's initial parole suitability hearing was held before the
3  California Board of Prison Terms (hereinafter "Board"). Id. Petitioner participated in the hearing
4  and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and
5  deferred rehearing for five years. Id. at 59, 62.

6  Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of
7  habeas corpus on January 9, 2006, in the Los Angeles County Superior Court. See Answer,
8  Exhibit 7. It was denied on March 3, 2006, in a reasoned opinion. Id. He then filed a habeas
9  petition in the California Court of Appeal, Second Appellate District. See Answer, Exhibit 8. The
10 petition was denied without comment on April 12, 2006. Id. Petitioner then filed a petition for
11 review in the California Supreme Court. See Answer, Exhibit 9. The petition was denied without
12 comment on December 13, 2006. Id.

13 Petitioner filed the instant petition for writ of habeas corpus in the Sacramento Division
14 of the Eastern District of California of the United States District Court on April 16, 2007. The
15 petition was transferred to the Fresno Division and received in this Court on April 25, 2007. The
16 petition challenges the 2005 decision of the Board denying parole. Petitioner contends the
17 Board's decision finding Petitioner posed an unreasonable risk of danger to society is contrary to
18 the evidence. He argues the state court decision upholding the Board's denial of parole was
19 unreasonable.

20 On August 21, 2007, Respondent filed an answer to the petition. Petitioner filed a
21 traverse on September 4, 2007.

## FACTUAL BACKGROUND[1]

23 On June 23, 1987, at approximately 2:00 a.m., the victim and his companion walked to
24 the victim's car, which was in the parking lot of the Queen Mart burger stand. Two other
25 witnesses went to a separate car. Petitioner and two others approached the victim. The victim's
26 companion indicated that Petitioner and the victim spoke in Spanish for 20 to 30 seconds.

---

28  [1]The factual background is derived from the summary of facts as set forth in the June 2, 2005, parole suitability hearing which was taken from the probation officer's report. See Answer, Exhibit 2 at 11-13.

2

1  Petitioner then reached behind his back, and walked toward the victim. Petitioner pulled out a
2  gun from his waistband, held it out in front of him, and pointed it at the victim. The victim then
3  grabbed Petitioner's hand which held the gun. A struggle ensued. The victim backed up in a
4  clenched position, at which time Petitioner backed up and was able to point the gun at the
5  victim's head, while the victim still had a hold of Petitioner's arm. Petitioner then fired one shot.
6  The victim fell immediately backwards and expired. Petitioner and his two companions then fled
7  the scene. It was later determined that the victim's cause of death was a gunshot wound to the
8  head.
9        One of Petitioner's companions that was present when the shooting took place told police
10 that he, Petitioner, and another companion left the bar at closing time. As they were leaving, they
11 saw the victim and confronted him. He claimed that Petitioner and the victim started to fight. At
12 this time, he saw Petitioner pull a gun and fire it once, at which time the victim fell to the ground.
13 They then ran to Petitioner's van and drove away from the scene. Petitioner tossed his gun out of
14 the van window and gave the keys to the vehicle to the witness with instructions to tell his family
15 that he was going to flee to Mexico.

16                                    **DISCUSSION**

17 I.      Standard of Review

18       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
19 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
20 enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries
21 v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
22 Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
23 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
24 The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
25 provisions.
26       Petitioner is in custody of the California Department of Corrections pursuant to a state
27 court judgment. Even though Petitioner is not challenging the underlying state court conviction,
28 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but

4

unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Petitioner's claims were presented on January 9, 2006, in a petition for writ of habeas corpus to the Los Angeles County Superior Court. See Answer, Exhibit 7. On March 3, 2006, the superior court denied the claims in a reasoned opinion. Id. Petitioner then presented those claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits 8, 9. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an

adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. Petitioner does not dispute that he received these procedural rights.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 512 F.3d at 542, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of

witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.[2]

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 512 F.3d at 543, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

---

[2] 15 Cal. Code of Regs. tit. 15, § 2402(c) sets forth certain factors which, if found, demonstrate unsuitability:

(c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
  (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
  (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
  (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
  (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
  (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
  (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

In denying parole in this case, the Board provided several reasons for its decision: 1) The violent and brutal nature of the commitment offense; 2) Criminal history both prior to the offense and while incarcerated; 3) Insufficient participation in self-help and therapy programming; 4) Psychological evaluation; 5) Unrealistic parole plans; and 6) Opposition by the Los Angeles County District Attorney's Office. See Answer, Exhibit 2 at 59-61. Petitioner argues that there is no evidence supporting the finding that he currently poses an unreasonable risk of danger to society if released. Review of the Board's decision reveals that the state court decision approving the Board's determination of unsuitability was not unreasonable.

The primary factor in the Board's determination was the commitment offense itself. The Board considered the inexplicable motive and the callous nature of the offense. The facts show Petitioner attempted an armed robbery. Apparently dissatisfied that the victim had nothing to offer, he pulled out a gun from his waistband and shot the victim in the head, killing him. The state court reasonably found some evidence supported the finding that the offense itself demonstrated Petitioner remained an unreasonable threat to public safety.

In addition to the commitment offense itself, the Board determined that Petitioner had an extensive history of criminal, violent behavior in prison pursuant to § 2402(c)(6). In support of this finding, the Board cited five CDC-115 serious rules violations for two instances of mutual combat, a battery on an inmate, a refusal to report to work, and a failure to meet program expectations. See Answer, Exhibit 2 at 60. Petitioner had also sustained nine CDC-128 counseling chronos. Id. at 64. Given Petitioner's violent, criminal behavior in prison, the Board determined he currently posed an unreasonable risk of danger should he be released. There is no question that the state court decision finding some evidence supported this finding was entirely reasonable.

The Board also considered Petitioner's failure to participate sufficiently in self-help and therapy programming. Id. at 60. As previously noted, the Board must consider "[a]ll relevant, reliable information available" in determining Petitioner's suitability for parole. 15 C.C.R. § 2402(b). The Board must consider Petitioner's "past and present attitude toward the crime" and his "past and present mental state." Id. The Board must also consider any psychological factors

pursuant to §2402(c)(5). In support of this finding, the Board noted Petitioner admitted he abused alcohol and drugs in the past, and he had been drinking heavily at the time of the offense. See Answer, Exhibit 2 at 36. Despite past recommendations by the Board to seek programming for his addictions, Petitioner admittedly had not. Id. at 35. During the hearing, Petitioner candidly stated: "You know, it's my fault that I don't attend." Id. The Board determined that until Petitioner sought therapy for his addictions, he continued to pose an unreasonable risk of danger to the public. The state court decision finding some evidence supported this determination was certainly not unreasonable.

Pursuant to § 2402(c)(5), the Board also considered the most recent psychological evaluations. The Board noted the psychologist expressed serious concern over Petitioner's ability to maintain his sobriety if released. Even if Petitioner could maintain his sobriety, the psychologist found Petitioner's level of dangerousness would still be greater than the average citizen. See Answer, Exhibit 2 at 40, 61. The psychologist's findings were congruent with the Board's determination that Petitioner posed an unreasonable risk of danger to the public. The state court decision finding some evidence was reasonable.

In addition, the Board noted Petitioner had unrealistic parole plans. There was nothing submitted to the Board in writing demonstrating Petitioner had a place to live and/or work in Mexico, which is where Petitioner would be released if granted parole.

The Board also considered the opposition of the Los Angeles County District Attorney's Office. The agency was strongly opposed to a grant of parole due to the heinous nature of the offense, Petitioner's recalcitrance while in prison, his selective memory of events, and lack of self-help therapy. The statement in opposition was properly considered pursuant to Cal. Penal Code § 3042 and 15 C.C.R. § 2402(b).

The Board did consider circumstances demonstrating suitability pursuant to § 2402(d). Petitioner was commended for acquiring a vocation in landscaping and for obtaining a GED. See Answer, Exhibit 2 at 61. Nevertheless, the Board found these positive factors did not outweigh its determination that Petitioner remained an unreasonable risk of danger to society if released. The nature of Petitioner's offense, the need for self-help programming, his pattern of criminal

conduct while imprisoned, and his unrealistic parole plans were more indicative of a danger to the public if released. In light of these factors, the Board's determination that Petitioner continued to pose an unreasonable risk of danger to the public if released is supportable. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and
2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **April 21, 2008**              **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE

10